UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

TAMARA H.,

                  Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

                  Defendant.

Case No. C25-5982-MLP

ORDER

## I.     INTRODUCTION

Plaintiff seeks review of the denial of her application for Disability Insurance Benefits. Plaintiff contends that the administrative law judge ("ALJ") erred by misevaluating her step-two impairments, the medical opinion evidence, and her testimony. (Dkt. # 13.) The Commissioner filed a response arguing that the ALJ's decision is free of legal error, supported by substantial evidence, and should be affirmed. (Dkt. # 17.) Plaintiff filed a reply. (Dkt. # 18.) Having considered the ALJ's decision, the administrative record ("AR"), and the parties' briefing, the Court AFFIRMS the Commissioner's final decision and DISMISSES the case with prejudice.[1]

---

[1] The parties consented to proceed before the undersigned Magistrate Judge. (Dkt. # 2.)

ORDER - 1

## II.    BACKGROUND

Plaintiff was born in 1970, has at least a high school education, and previously worked as a nuclear engineer. AR at 33-34. She last worked in September 2020. *Id.* at 19. In June 2021, she applied for disability benefits, alleging disability as of September 3, 2020. *Id.* at 17. Her applications were denied initially and on reconsideration, and she requested a hearing. *Id.* After a July 2024 hearing, the ALJ issued a decision finding Plaintiff not disabled. *Id.* at 17-35.

Using the five-step disability evaluation process,[2] the ALJ found, in pertinent part, that Plaintiff has the severe impairments of status post cerebrovascular accident ("CVA") with neurocognitive effects; cervical spine degenerative disc and joint disease; and lumbar spine degenerative disc and joint disease. AR at 19-20. She has the residual functional capacity ("RFC") to perform light work with the following additional limitations: she can occasionally climb ladders, ropes, or scaffolds; occasionally crawl; frequently, but not constantly, handle and finger bilaterally; have occasional exposure to vibration, humidity, and temperature extremes; understand, remember, and apply short, simple instructions; perform routine, predictable tasks not in a fast-paced production environment; make simple decisions; and tolerate only occasional routine workplace changes. *Id.* at 24. She cannot perform her past relevant work but can perform work as a cashier, lab sample carrier, and marker, and therefore is not disabled. *Id.* at 34.

The Appeals Council denied review, making the ALJ's decision the Commissioner's final decision. AR at 1-6. Plaintiff then appealed to this Court. (Dkt. # 4.)

## III.    LEGAL STANDARDS

Under 42 U.S.C. § 405(g), this Court may overturn the Commissioner's denial of social security benefits if the ALJ's decision rests on legal error or is not supported by substantial

---

[2] 20 C.F.R. § 404.1520.

ORDER - 2

evidence. *Smartt v. Kijakazi*, 53 F.4th 489, 494 (9th Cir. 2022). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 102-03 (2019) (cleaned up). The Court must consider the record as a whole in determining whether substantial evidence supports the ALJ's findings. *Id.*

The Court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021). The ALJ is responsible for evaluating testimony, resolving conflicts in the medical evidence, and addressing ambiguities in the record. *Smartt*, 53 F.4th at 494-95. Where the evidence is susceptible to more than one rational interpretation, the Court must uphold the ALJ's decision. *Id.* Even where the ALJ errs, reversal is not warranted unless the error affected the outcome of the disability determination. *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020). The party challenging the decision bears the burden of showing harmful error. *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

## IV.    DISCUSSION

### A.    The ALJ Did Not Harmfully Err at Step Two

Plaintiff argues the ALJ failed to properly evaluate the severity of her sleep apnea at step two and therefore omitted related limitations from the RFC. (Dkt. # 13 at 11-13.) Step two is a threshold screening device intended to dispose of weak claims and is not meant to identify every impairment to be considered in the RFC. *Buck v. Berryhill*, 869 F.3d 1040, 1048-49 (9th Cir. 2017).

The ALJ found Plaintiff's sleep apnea to be non-severe. AR at 20. Even assuming that determination was erroneous, any error was harmless because the ALJ resolved step two in Plaintiff's favor by identifying multiple severe impairments and proceeding through the

ORDER - 3

sequential evaluation. *Id.*; *Buck*, 869 F.3d at 1049. But the ALJ was still required to consider limitations from all impairments in formulating the RFC. *See* 20 C.F.R. § 404.1545(a)(2).

Here, the ALJ acknowledged Plaintiff's obstructive sleep apnea, noted that it was at times untreated, and recognized that she was prescribed treatment for her symptoms and used both prescribed medication and marijuana for insomnia. AR at 20 (citing *id.* at 401-49, 713-14, 1840, 2258, 2325-93). The ALJ found no objective medical evidence that sleep apnea caused more than minimal work-related limitations and expressly stated that he considered Plaintiff's non-severe impairments, including her sleep-related complaints, when assessing her mental functioning, ultimately finding no more than moderate mental limitations. *Id.* at 22, 27, 32. Because the ALJ considered sleep apnea in the RFC analysis and reasonably determined that it did not warrant additional limitations beyond those already included, there was no reversible error at step two. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

**B.      The ALJ Did Not Err in Evaluating Medical Evidence**

Under regulations applicable to this case, the ALJ is required to articulate the persuasiveness of each medical opinion, specifically with respect to whether the opinions are supported and consistent with the record. 20 C.F.R. § 404.1520c(a)-(c). These findings must be supported by substantial evidence. *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

In July 2022, Staci Day, PA-C, performed a physical disability evaluation and opined that Plaintiff was essentially limited to sedentary exertion: standing and walking 30 minutes to 2 hours total in a workday, 15-45 minutes at a time; sitting 6-8 hours total; lifting and carrying up to 10 pounds occasionally and 3-7 pounds frequently; only occasional use of foot controls, pushing/pulling, reaching, and gross and fine manipulation; inability to balance or climb ladders or stairs; and environmental and driving restrictions. AR at 948-60. She attributed these

ORDER - 4

limitations to stroke sequelae, lumbar degenerative disc disease, cervical degenerative disc disease, and carpal tunnel syndrome. *Id.*

The ALJ found Ms. Day's opinion unpersuasive as only somewhat supported and inconsistent with the longitudinal record. AR at 31. The ALJ noted that Ms. Day's examination showed some abnormal findings—slow, somewhat unsteady gait, pain with lumbar palpation and upper-extremity range of motion, hypertonicity of shoulder muscles, mild pain getting on and off the table—but also documented that Plaintiff could rise from sitting, get on and off the exam table, make a fist bilaterally, and had intact bulk, tone, and sensation with only mild focal weakness. AR at 31 (citing *id.* at 951-56). The ALJ contrasted Ms. Day's restrictive standing, walking, and manipulative limitations with numerous other examinations that repeatedly found normal gait, intact heel-toe walk, full strength, full range of motion, intact sensation, no acute distress, and negative straight leg raise *Id.* at 25-26, 31 (citing *id.* at 372-84, 398-99, 432, 437, 475, 477, 531-608, 789, 794, 797, 804-05, 817, 820, 844, 855, 968-1071, 1236-40, 1840, 2284). From this, the ALJ concluded that the record supported a capacity for light work rather than the more restrictive, essentially sedentary limitations Ms. Day endorsed, and that her additional postural, manipulative, and hazard-related limits were unwarranted. *Id.*

Plaintiff notes that the record also contains abnormal musculoskeletal findings: limited range of motion with pain and stiffness; tenderness and joint restriction; positive compression and nerve tension tests; a "poor prognosis" due to the complexity of her scoliosis; and imaging showing extensive curvature and multilevel cervical and lumbar degeneration. (Dkt. # 13 at 5-7 (citing, *e.g.*, AR at 372-86, 437, 533-92, 593-609, 611-12, 794, 800, 805, 855, 967-78, 1826, 1944-47).) Those findings are consistent with significant impairment, and the ALJ did not suggest otherwise. But the ALJ was not required to adopt Ms. Day's particular assessment of the

ORDER - 5

resulting work-related restrictions where, as here, other treating and examining sources repeatedly documented largely intact gait, strength, and functional use of the upper extremities over time, and treatment remained limited to medication, injections, chiropractic care, physical therapy, and other non-surgical modalities. AR at 25-26, 29-31. The ALJ acknowledged both normal and abnormal findings and explained why, taken together, he viewed Ms. Day's very restrictive standing, walking, and manipulative limits as inconsistent with the longitudinal record. This reflects a permissible resolution of conflicting evidence.

Plaintiff also argues that Ms. Day's opinion is supported by ongoing post-stroke abnormalities in coordination and hand function, including therapy notes documenting ataxia, tremor, need for cueing, and difficulty with fine manipulation and daily tasks into late 2022, and by the fact that Plaintiff ultimately underwent carpal tunnel release. (Dkt. # 13 at 8-10 (citing, *e.g.*, AR at 396-99, 429, 475-79, 855, 1545, 1549, 1606, 1634, 1648, 1651, 1657, 1660, 1678, 1682-86, 1986-89, 2063-69).) The ALJ, however, expressly recognized Plaintiff's stroke sequelae and incorporated related limitations into the RFC; he did not find that she had "no" residual deficits. AR at 23-24, 29-32. What he reasonably rejected was Ms. Day's opinion that those deficits, together with her back impairment, reduced her to essentially sedentary work with only occasional use of the hands, in light of the many records noting normal coordination, normal or near-normal strength, and independence in a wide range of daily activities during the same period. *Id.* at 26-27, 29-31.

Nor did the ALJ err in considering Plaintiff's activities when evaluating consistency. He cited her reports of walking, gardening, cooking, and using her phone to play games. AR at 31. Plaintiff notes that many of these activities were "modified independent" and performed with extra time, breaks, or other accommodations. (Dkt. # 13 at 10-11 (citing AR at 1988-89).) The

ORDER - 6

ALJ did not conclude that these activities were equivalent to full-time work. Instead, he reasonably found that Plaintiff's ability to sustain these activities over time, together with generally benign examinations, undercut Ms. Day's view that Plaintiff had "overall poor functioning" inconsistent with even a reduced range of light work.

Finally, Plaintiff notes that the state agency medical consultants also limited her to occasional handling and fingering. (Dkt. # 13 at 11 (citing AR at 82, 96).) The ALJ rejected their additional limitations to occasional manipulation and occasional push/pull, explaining that testing showed only mild carpal tunnel findings, no radiculopathy, and that Plaintiff performed a wide range of hand-intensive activities. AR at 29-30. Plaintiff does not challenge the ALJ's evaluation of these opinions, which the ALJ otherwise found persuasive in assessing a reduced range of light work with postural, manipulative, and environmental restrictions. *Id.*

### C.    The ALJ Did Not Err in Evaluating Plaintiff's Testimony

Plaintiff testified that pain, weakness, and coordination problems caused significant exertional, postural, and hand-use limitations, and that stroke-related problems with understanding, memory, following instructions, concentration, completing tasks, and handling changes in routine prevented her from working regularly. AR at 42-73, 294-301, 321-28. The ALJ found these allegations only partly consistent with the evidence and discounted their severity as inconsistent with the record as a whole. *Id.* at 25.

Plaintiff contends that the ALJ failed to provide specific, clear, and convincing reasons for rejecting her testimony. (Dkt. # 13 at 14-18.) Absent evidence of malingering, an ALJ is required to provide clear and convincing reasons for discounting a claimant's testimony. *See Laborin v. Berryhill*, 867 F.3d 1151, 1155 (9th Cir. 2017). That said, the ALJ is not required to believe every allegation, nor to analyze testimony line by line. *See Ahearn*, 988 F.3d at 1116;

ORDER - 7

*Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020). The question is not whether this Court is convinced, "but instead whether the ALJ's rationale is clear enough that it has the power to convince." *Smartt*, 53 F.4th at 499.

As to physical symptoms, the ALJ summarized Plaintiff's allegations of disabling neck and back pain and stroke-related weakness and acknowledged imaging and examinations showing significant spinal abnormalities. AR at 24-25. Plaintiff argues that the ALJ improperly characterized her care as "conservative" because surgery was allegedly too complex and risky, citing an October 1, 2020 spine consultation. (Dkt. # 13 at 14-15 (citing AR at 438).) But that note does not state that surgery was contraindicated or unavailable. Rather, spine surgeon Philip Louie, M.D., indicated that neck surgery was not recommended because Plaintiff's neck pain was mild and there was no myelopathy, and that conservative care should be maximized for her multifactorial, nonchronic back pain, which had improved with physical therapy. AR at 438.

In any event, the ALJ did not discount Plaintiff's pain testimony solely because she did not undergo surgery. He relied on the overall course of treatment and objective findings: varied but conservative pain management; no escalation to cervical surgery; testing that did not show cervical radiculopathy; and repeated examinations over time documenting largely normal gait, strength, range of motion, and sensation, with no clear deterioration. AR at 25-26 (citing *id.* at 372-85, 436-37, 531-612, 781, 787-805, 850-55, 967-1071, 1804-24, 2270-92). While the record includes abnormal findings and imaging that could explain pain, the ALJ reasonably weighed them against this longitudinal pattern and found that Plaintiff's physical symptoms were not fully work-preclusive. *See Smartt*, 53 F.4th at 499-500.

Regarding Plaintiff's stroke residuals, the ALJ recognized significant early deficits in coordination, strength, and cognition and accepted that her functioning was markedly reduced in

ORDER - 8

the immediate post-stroke period. AR at 26. He then cited later records, beginning roughly within a year, showing no recurrent stroke activity, normal or near-normal gait and strength, improved fine motor function, and independence in daily activities. *Id.* at 26-27 (citing *id.* at 397-98, 457, 475, 841, 1467-69, 1840, 1842, 1848).

Plaintiff cites treatment notes from 2021-2023 reflecting ongoing cognitive deficits, need for cueing, and renewed speech therapy and neuropsychological evaluation. (Dkt. # 13 at 15-17 (citing, *e.g.*, AR at 457, 514-18, 762, 868, 1549, 1651, 1657, 1660, 1841, 1989, 2015-18).) These records appear in the same sections the ALJ cited and discussed when evaluating the medical opinions and RFC. *See* AR at 25-29, 30-32. The ALJ acknowledged early cognitive impairments and some later abnormal findings but contrasted them with numerous records documenting essentially intact cognition and mood, along with continued independence in activities of daily living. *Id.* at 27-29 (citing *id.* at 475, 514-15, 615-86, 1744, 1747, 1750, 1753, 1756, 1759, 1763, 1769, 1772, 1775, 1778, 1781, 1784, 1787, 1790, 1796-99, 2216-68). The ALJ interpreted the August 2022 consultative psychological exam similarly: Plaintiff reported memory and attention problems, but the examiner observed intact orientation, memory, intelligence, and judgment, with difficulty mainly in word finding. *Id.* (citing *id.* at 961-63). Faced with conflicting evidence, the ALJ reasonably gave greater weight to the overall pattern of largely normal findings while still incorporating stroke-related limitations into the RFC. *Smartt*, 53 F.4th at 499.

The ALJ also relied on Plaintiff's documented daily activities over time. The record reflects that she engaged in social events and dating, walked and gardened regularly, dog sat, cooked and baked using recipes, traveled alone by public transportation, handled her bills and housing decisions, organized events, attended festivals, and explored advocacy and volunteer work. AR at 27 (citing *id.* at 1745, 1748, 1751, 1754, 1757, 1760, 1767-68, 1770, 1773, 1779,

ORDER - 9

1782, 1785, 1788, 1791, 2222-23, 2225-26, 2231-32, 2237, 2241, 2244, 2250, 2253, 2255, 2261-62). Although some providers observed that she overestimated her abilities and had limited insight, those observations do not prevent the ALJ from considering what she actually did day to day. The ALJ did not equate these activities with full-time work but reasonably found that, together with mostly normal examinations, they were inconsistent with allegations of completely disabling limitations. *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).

Finally, the ALJ cited 2024 records showing that Plaintiff reported feeling generally well, remained active, and had normal physical and mental examinations, and he noted her continued smoking and drinking despite counseling as modestly inconsistent with claims of extreme limitation. AR at 28 (citing *id.* at 396, 867, 1841, 2216, 2219, 2222, 2225, 2228, 2231, 2234, 2237, 2240, 2243, 2249, 2252, 2255, 2258, 2261, 2264, 2267, 2304, 2308, 2311-12, 2344). Overall, the decision shows that the ALJ recognized serious early stroke effects and ongoing impairments but concluded that the longitudinal medical evidence and Plaintiff's activities did not support the degree of limitation she alleged. *Id.* at 25-29. Because that interpretation is rational and supported by substantial evidence, the Court must uphold it even if Plaintiff offers a different reasonable view of the record. *Smartt*, 53 F.4th at 494-95.

## V.    CONCLUSION

For the foregoing reasons, the Commissioner's final decision is AFFIRMED and this case is DISMISSED with prejudice.

Dated this 12th day of June, 2026.

MICHELLE L. PETERSON
United States Magistrate Judge

ORDER - 10